In re:

FREDERICK F. BOYCE,   Case No.   04-23908
　　　　　　　　　　　　　　　　　　Chapter 13
　　　　　　　　　　　　　　　　　　Hon. Walter Shapero

　　　Debtor.
_____/

OPINION
RE: CREDITOR'S OBJECTIONS TO DEBTOR'S CLAIMED EXEMPTIONS

　　　Before the Court are objections to exemptions filed by Creditor, David Zeilinger (Creditor). Based on its consideration of testimony from several witnesses, the documents admitted into evidence, and the parties' post-hearing briefs, the Court overrules in part and sustains in part Creditor's objections to Debtor's exemptions.

Jurisdiction

　　　This Court has subject matter jurisdiction over this bankruptcy case under 28 U.S.C. § 1334(a), 157(a), and 157(b)(1) and Local Rule 83.50 (E.D.M.). This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(B).

Facts

　　　On his Schedule C, Debtor elected the federal exemptions provided in 11 U.S.C. § 522(d), claiming an exemption of his joint tenancy interests in several parcels of real property pursuant to 11 U.S.C. § 522(d)(5) and stating the value of that exemption, and the current total market value of the involved real property, as "zero." The parties agreed upon the following facts relative to the real property:

| Property | Location of Property | Parcel Code No. | Property Interest | 2004 State Equalized Value |
|---|---|---|---|---|
| A | Charlevoix County, Michigan | 008-031-001-00 | Debtor and his brother, Thomas L. Boyce as joint tenants with full rights of survivorship | $13,500 |
| B | Charlevoix County, Michigan | 008-031-003-15 | Debtor, his brother, Thomas L. Boyce, and his father, Thomas F. Boyce as joint tenants with full rights of survivorship | $49,200 |
| C | Charlevoix County, Michigan | 008-031-017-00 | Debtor and his brother, Thomas L. Boyce as joint tenants with full rights of survivorship | $44,500 |
| D | Charlevoix County, Michigan | 008-031-005-30 | Debtor, his brother, Thomas L. Boyce, and his father, Thomas F. Boyce as joint tenants with full rights of survivorship | $13,600 |
| E | Charlevoix County, Michigan | 008-031-005-20 | Debtor, his brother, Thomas L. Boyce, and his father, Thomas F. Boyce as joint tenants with full rights of survivorship | $13,100 |
| O | 3501 West Ostego Lake Drive, Gaylord, Ostego County, Michigan | 010-020-400-015-00 | Debtor and his brother, Thomas L. Boyce as joint tenants with full rights of survivorship subject to a life estate in favor of their parents | $127,300 |

Properties A, C, D, and E are vacant land. Property B is improved with a hunting cabin and pole barn. Debtor's parent's home is located on Property O. Debtor also claimed as exempt his individual interest in certain household furnishings and appliances under 11 U.S.C. § 522(d)(3), valuing that exemption, and the current market value of such property, as $1,500.00.

Creditor filed objections, hearings were held, and at the conclusion of the final hearing, the parties agreed that the record could be supplemented by Creditor's submission of an agreed upon copy of a deposition transcript, together with their post-hearing briefs.

Discussion

A.  Burden of Proof in Contested Exemption Matter

An exemption claimed by a debtor is presumptively valid unless a party in interest objects.  11 U.S.C. 522(l); *See also In re Swift*, 129 F.3d 792, 799 (5th Cir. 1997).  An objecting party has the burden of producing evidence that rebuts the *prima facie* presumption that the claimed exemption is valid.   Fed. R. Bankr. P. 4003(c); *See also In re Mann*, 201 B.R. 910, 915 (Bankr.E.D.Mich.1996) (citing *Lester v. Storey (In re Lester)*, 141 B.R. 157, 161 (S.D.Ohio 1991)).  An objecting party must "establish, by a preponderance of the evidence, that the exemption should be disallowed."  *Hamo v. Wilson (In re Hamo),* 233 B.R. 718, 723 (B.A.P. 6th Cir. 1999).  If an objecting party meets its burden of proof, "the burden shifts to the debtor[ ] to demonstrate that the exemption is proper." *In re Kimble,* No. 05-53517, 2006 WL 1633481, *4 (Bankr. S.D. Ohio June 13, 2006 (quoting *In re Rhinebolt*, 131 B.R. 973, 975 (Bankr. S.D. Ohio 1991)).  However, if an objecting party fails to meets its burden of proof, the "exemption will stand." *Mann,* 201 B.R. at 915 (citing *In re Baumgardner,* 160 B.R. 572, 573-74 (Bankr.S.D.Ohio 1993)).  The bankruptcy court "must analyze the facts and circumstances of each case."  *In re Hamo*, 233 B.R. at 723 (citing *In re Hoppes*, 2020 B.R. 595, 597 (Bankr. N.D. Ohio 1996) and *In re Baumgardner*, 160 B.R. 572, 573 (Bankr. S. D. Ohio 1993)).

    1.  Real Property: Joint Interests Exemption

Debtor claimed the Section 522(d)(5) exemption for his interests in a number of parcels of property as a joint tenant with rights of survivorship.  His co-joint tenants are his brother and his parents.  As noted, he valued his interests at "zero."  (The trustee and

Creditor have also objected to confirmation of Debtor's proposed Chapter 13 plan on the grounds that the plan fails to meet the best interest of creditors test arguing that the value of the Debtor's said interests is substantially more than "zero."). Creditor also objects to the exemption primarily arguing against the "zero" value placed on it by Debtor.[1]  The enduring and basic issue here is the value of Debtor's joint interest, whether in the context of an exemption or plan confirmation objection.  Based on the plain language of the statute, Debtor would be entitled to claim his interest as exempt pursuant to the Section 522(d)(5)[2] (the so-called wild card exemption) to the extent of whatever the value of that asset is up to the statutory exemption.  In this case, despite the fact that he is entitled to claim an exemption in an amount greater than zero,[3] Debtor has valued his exemption at "zero."  If that is what he wishes to claim, Creditor does not oppose it as such, providing the "zero" value of Debtor's exemption is not determinative of the value of Debtor's interest in the involved real property for confirmation purposes.

The Court, mistakenly as it now views the situation, separated out the exemption objection issue from the confirmation issue-undertaking the former before the latter.  The thinking may have been that having the Court first determine that Debtor's asserted value of zero in effect, would and should, be determinative of the value for confirmation objection purposes as well, and that the time and place to determine that value is incident to the exemption objection process.  The difference in doing so is that in the exemption context it is the objecting party that has the burden of proving the exemption was not properly claimed, whereas in the plan confirmation context, it is the debtor who

---

[1] During the hearing, Creditor argued for the first time that Debtor could not claim an exemption in the properties at issue because Debtor and his brother, Thomas L. Boyce, were allegedly partners in a logging business and the real properties were actually assets of this business.  Creditor raised this argument in the context of its objections to plan confirmation and it is preserved as a viable argument relative to the confirmation of Debtor's proposed chapter 13 plan.

[2] Section 522(d)(5) states that a debtor may exempt his "aggregate interest in *any property* not to exceed in value $975 plus up to $9,250 of any unused amount of the exemption provided under paragraph (1) of this subsection." 11 U.S.C. § 522(d)(5) (emphasis added).

[3] Debtor's Amended Schedule C indicates that he did not fully use the amount of the exemption he is entitled to under 11 U.S.C. § 522(d)(1).

4

has the burden of satisfying the best interest of creditors test, which in this situation places the burden on the debtor of proving the value of debtors interest in the property is zero.

      The Court has rethought its procedural posture in this case. What is required is that the issue of the value of the debtors interest in the property for purposes of the best interest of creditors test, and any other confirmation issues, be disposed of in the context of the confirmation hearing under the burdens of proof rules applicable to such hearings. Accordingly, the Court will be directing that an evidentiary hearing be set on the confirmation of Debtor's plan at a date which the Court believes will afford the parties any necessary discovery time and opportunity. The parties may ask for a status conference should the date set be deemed inappropriate.

      2.    <u>Household Furnishings and Appliances</u>

      On his Schedule B under the "household goods and furnishings, including audio, video and computer equipment" category, Debtor disclosed his individual interest in the following personal property: "refrigerator, stove, microwave, washer, dryer, freezer, kitchen table, couch, two chairs, lamps, television (2), stereo, DVD, VCR, computer, three beds, 4 dressers, [and a] lawnmower." (Amended Sch. C.)(Doc. No. 9). Debtor indicated that the total current market value of this property as $ 1,500. Each of these items of personal property were restated and claimed as exempt on his Schedule C pursuant to 11 U.S.C. § 522(d)(3) at a value equal to its total current market value. Creditor objects to Debtor's claimed exemption of his interest in this personal property on the basis that such property may actually be an asset of and owned by Dan's TV & Appliances, Inc., a corporation in which Creditor and Debtor were equal stockholders of but that closed prior to Debtor's bankruptcy filing. Creditor alleges that Debtor may have wrongfully appropriated certain items from the inventory of Dan's TV & Appliances, Inc. (Dan's TV & Appliances or the business). Creditor argues that to the extent Debtor's exemption involves that property, the Court should disallow Debtor's exemption, at least to the extent such personal property is shown not to be property of the estate. Based on the evidence in the record and the parties' respective burdens of proof, the Court finds that Creditor carried his burden of proof as to some, but not all the items of personal

5

property exempted by Debtor.

Although the record does not contain substantial evidence about the business, certain basic facts are not in dispute. In 1997, Creditor and Debtor purchased their interests in Dan's TV & Appliances, Inc., a corporation in which each held a 50% interest in. The business operated a retail store that sold electronics, appliances, and some furniture. Debtor spent most of his time at the store, taking care of sales and administrative functions while Creditor was "out on the road" handling service calls. The business closed in April 2004 and during this same year Creditor commenced a lawsuit against Debtor in state court, which was "pending" at the time he filed bankruptcy.

During the evidentiary hearing, Debtor testified that the refrigerator, stove, and microwave, in his home since 2003, are manufactured by Amana and approximately 4 to 5 years of age. When Creditor specifically questioned Debtor about the refrigerator and stove, Debtor admitted that he took them from the business.

Creditor, David Zeilinger, testified that throughout his business relationship with Debtor, he suspected that Debtor expropriated inventory from the business. As an example, Creditor testified that during a visit to the hunting cabin (as late as November 2002), he noticed "beds, table, chairs, refrigerator, stove, satellite, [and] stereo" at the cabin. Creditor testified that when he asked Debtor where this property came from, Debtor admitted that the property was from their business but that it belonged to him. Creditor also testified that at the time the business was in the process of winding down, inventory existed. Creditor explained that when he visited the store in March 2004 and then again in April 2004, inventory was missing, which included: 2 TV stands, 3 recliners, table and chairs, a side-by-side refrigerator, sodding iron, a 4 drawer pine dresser, a Dacor drop in cooktop, VCR, DVD, RCA 32 inch TV, range dishwasher, 3 Holland gas grills, garbage disposal, RCA stereo, Vent-a-Hood, and a kegarator, 20 cubic refrigerator, and an oscilloscope. On cross examination, Creditor explained that he believed Debtor took inventory from the business because Creditor's practice was to go to the store in the morning, handle service calls during the day, and return to the store at night to drop off his invoices. He would review and compare the sales invoices for the day with the remaining inventory in the store. Creditor stated that he assumed that if

6

something was not at the store and there was no bill, that Debtor took it.  Creditor admitted that he later learned that a couple of items he thought were missing from inventory had actually been sold to a customer or given away in exchange for services rendered to Dan's TV & Appliances.

Jody Hawley, Creditor's girlfriend, testified that in April 2004 she watched Debtor remove property from the business premises and load them in his pick-up truck and trailer.  Ms. Hawley testified that the removed property consisted of microwaves, a cabinet, tables, and chairs.  Ms. Hawley testified that she followed Debtor to the Ostego Lake Drive property but did not see anything being physically unloaded from Debtor's vehicle or trailer.  Debtor admitted that he loaded an old freezer, washer, dryer, and an old microwave in his trailer but that these items were not inventory of the business but "junk."  Debtor further testified that the table and chairs he loaded were delivered to a customer but did not provide any additional details or documentation (i.e., invoice from Dan's TV & Appliances) about this transaction.

Thomas L. Boyce, Debtor's brother, testified that Debtor furnished the cabin located on Property B with bunk beds, a gas refrigerator, and a gas stove.  With regard to the refrigerator, Debtor testified that he purchased it from Potters Distributing.  Debtor stated that Potters Distributing shipped it first to the business and then he paid for the refrigerator by personal check.  In support of his testimony, Debtor did not introduce a copy of the cancelled check.  As for the gas stove, Debtor testified that it was given to him by a lady in Charlevoix.  Debtor explained that as part of the installation of a new range in this woman's home, she let him have her old stove.  Debtor did not introduce any supporting documentation in the form of an invoice or bill of lading for the new range or a cancelled check.

In response to the allegations that he wrongfully took inventory from Dan's TV & Appliances, Debtor admitted that he took items but explained that he did so as "repayment" for the loans he made to the business, which he estimated to be approximately $54,000 to $57,000.  In support of his testimony, Debtor relied on copies

7

04-23908-dob    Doc 105-1    Filed 08/08/06    Entered 08/08/06 09:55:08    Page 7 of 10

of invoices from Dan's TV & Appliances (Ex. 1).[4]  Debtor explained that each of these invoices contained the date he took an item, a description of the item taken, and the price of each item.  Debtor admitted that he still possesses the property described in these invoices.  During cross examination, Debtor admitted that he kept these invoices in his possession and did not turn them into Teresa Cherry, the bookkeeper for Dan's TV & Appliances, until the business was closing.  Debtor denied that he prepared these invoices only after Creditor commenced the lawsuit against him in 2004.

During her deposition, Ms. Cherry testified that she kept the books and records for the business and primarily interacted with Debtor. (Tr. at 4-5).  She explained that on a monthly basis she would go to the store to pick up paperwork from the Debtor to balance the accounts which included a book he maintained in which he recorded information about sales (TV's, appliances, audio, parts), labor, accounts receivable or money in, charges on the account, and people that paid.  (Tr. at 13).  She further testified about her difficulty in getting the sales and accounts receivable accounts to balance and as a result she had to create "an account called cash over and under, which [is] where all the short money falls flowed into to [sic] balance."  (Tr. at 16).  Ms. Cherry testified that she was prompted to create this account "[b]ecause there was not proper paper trails and there was not proper records – so I would be able to balance the checkbook every single time." (Tr. at 16).

Ms. Cherry also testified that she recorded the invoices Debtor submitted to her on June 23, 2004. (Tr. at 5).  She explained that Debtor asked her to back date them but she told him she could not because the years were closed already and it would affect their tax returns.  (Tr. at 5).  She stated that she recorded them as April 1, 2004, which was the last entry being used for the business.  (Tr. at 5).  Ms. Cherry testified that the

---

[4] This exhibit consists of 8 invoices dated from May 18, 2001 through April 10, 2004.  One invoice does not contain a date.  The property listed consists of 1 Antenna, 3 tripods, 1 inast, 100' wire, FM Antenna, 1 Technica stereo, 1 Vent-a-hood, 2 Holland gas grills, 1 air conditioner, 1 ARB 2188, 1 MGR 58801, 1 damaged MDG 9155, 1 ACA 1860, 1 recliner, 1 Dacor drop in, 1 garbage disposal, 1 dresser, and 1 Holland grill.  The Court notes that although Debtor admitted he still possess this personal property, his schedules do not contain any information about some of this property.

8

dates indicated on the invoices were in "Fred's writing." (Tr. at 8-10). When questioned about loans Debtor may have given to the business, Ms. Cherry testified that Debtor hardly ever provided her with proper documentation about these loans. (Tr. at 11). She stated that if an unexplained deposit occurred, she would have to ask Debtor where the money came from and he would simply tell her that it was money he gave the store without providing any supporting documents to her. (Tr. 12).

The Court determines that the following property is not inventory from the business: dryer, freezer, kitchen table, two televisions, three dressers, and a lawnmower. Debtor testified that these items have either been in his possession for at least 12 years or were not similar to the items Creditor alleged were inventory of the business. Since the burden of persuasion always remained with the Creditor, as the objecting party, Creditor's failure to introduce any evidence to contradict Debtor's representations is fatal to his position.

The Court also finds that the following items of property were owned by and part of the inventory of Dan's TV & Appliances: refrigerator, stove, microwave, washer, couch, two chairs, lamps, stereo, DVD, VCR, computer, 3 beds, and 1 dresser. Debtor admitted that he took two specific items from Dan's TV & Appliance (i.e., refrigerator and stove) and as early as 2001 customarily and periodically engaged in the practice of taking items from the business. While Debtor attempted to justify his conduct of taking business property as being in "repayment" for loans he contributed to the business, the Court does not find Debtor's testimony or evidence credible or sufficient to contradict evidence introduced by Creditor. Specifically, Debtor did not introduce any financial documentation whether in the form of canceled checks, money orders, or business tax returns to establish that he provided the substantial amount of loans to the business that he claims he did. Nor did Debtor introduce any persuasive evidence to establish that he purchased or obtained such personal property from another source other than the business or that such personal property was distributed to him as part of the winding up of the business. Once Creditor introduced sufficient evidence to rebut the presumptively validity of Debtor's exemption of the personal property, the burden shifted to Debtor to establish that he had an individual interest in the personal property; he failed to do so.

9

The Court concludes that these items of personal property are owned by Dan's TV & Appliances, Inc., and not the Debtor, which prevents Debtor from including them in his exemption under Section 522(d)(3).

## Conclusion

For the reasons stated above, the Court overrules in part and sustains in part Creditor's objection to Debtor's exemptions.

**Entered: August 07, 2006**

                                          **/s/ Walter Shapero**
                                 **Walter Shapero**
                                 **United States Bankruptcy Judge**